MARIO ORTIZ FLORES ET AL., Plaintiff and Appellants, *v.* MARÍA BERMÚDEZ PÉREZ ET AL., Defendants and Appellees.

No. 9982. Argued November 15, 1949.—Decided December 19, 1949.

*Luis Mendín Sabat* for appellant. *Domínguez & Domínguez* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

By an open will executed in the city of Guayama on July 19, 1945, Ramón Ortiz Santiago, 74 years old, acknowledged several natural children and the existence of a debt amounting to $2,000 in favor of his concubine María Bermúdez Pérez; he designated Antonio Pomales Navarro testamentary executor; he bequeathed to said María Bermúdez Pérez one-half of his estate, after deducting from said half three legacies of $200 in favor of as many persons; he expressed his wish that in payment of said legacy there.be adjudicated to the afore-mentioned legatee, three houses he owned on Jobos, Jobos at the corner of San José, and San José Streets, in Guayama, which he described in his will; and designated as his heirs the natural children he acknowledged in the will and who were named Pedro and Mario Ortiz Flores, Ramona, Juana, Ramón and Rafael Ortiz Bermúdez, in the remaining portion of all his properties, rights and actions, share and share alike.

The testator died on October 18 of that year, and thereupon his acknowledged children Mario Ortiz Flores, Pedro

Ortiz Torres and Mercedes Ortiz Flores [1] brought an action for nullity of will and other relief against the legatee and senior creditor María Bermúdez Pérez and against the other natural children, because they refused to join as plaintiffs. Insofar as pertinent the complaint alleged that plaintiff Mercedes Ortiz Flores had been ignored; that the testator "was not of sound mind" when he executed the will; that plaintiff Pedro Ortiz Torres was designated as Pedro Ortiz Flores; that a preferred credit for $2,000 was acknowledged in favor of the defendant María Bermúdez Pérez, when the truth is that she had only given the testator $200, the amount of an indemnity received for the death of a son; that the legacy in favor of María Bermúdez Pérez is void inasmuch as it is contrary to the provisions of §§ 751, 794 and others of the Civil Code; that the appraisement of the properties made by the testator is not real, since the value thereof exceeds $8,000; and that the designated executor has not complied with the provisions of the Special Legal Proceedings Act. Based on those allegations they prayed that the will be declared void, because Mercedes Ortiz Flores was omitted therein as a natural child and heir; that the legacy of one-half of the testator's estate in favor of María Bermúdez Pérez be declared null and void; that the preferred credit of $2,000 in favor of the latter be substituted by the sum of $200; that an inventory be formed and an appraisement made of the testator's estate at the time of his death; that it be declared that the natural children appearing as plaintiffs and defendants are entitled to the corresponding hereditary portion and that the executor be ordered to comply with the provisions of law.

The complaint was answered and the case heard. Thereupon, the District Court of Guayama rendered judgment de-

---

[1] Mercedes Ortiz Flores was declared an acknowledged natural daughter of Ramón Ortiz Santiago by judgment rendered by the District Court of Guayama in an independent action brought for that purpose, subsequent to the death of the testator.

creeing the nullity of the designation of heirs, the opening of the intestate succession and overruling the complaint in all its other particulars. The plaintiffs appealed from that judgment and they now maintain that the lower court erred: (1) in deciding that the testator was of sound mind when he executed the will and that the latter is valid; (2) in declaring valid the bequest of one-half of the estate in favor of María Bermúdez Pérez and that she be adjudicated, in satisfaction thereof, the three houses described in the will; and (3) in acknowledging as preferred the $2,000 credit of María Bermúdez Pérez.

The errors assigned by the appellants oblige us to examine the evidence presented. The oral evidence they offered was confined to the testimony of the plaintiff Pedro Ortiz Torres. The latter testified that his father, Ramón Ortiz Santiago, worked for many years with Mr. Jenaro Cautiño and that when he retired from work he became sort of crazy; that he did not sleep, he got up from his bed and kept pacing up and down all night long; that sometimes he called him at 3:00, 4:00, 5:00 or 6:00 in the morning and made him go with him at that hour to Mr. Cautiño's farm "La Carlota," where he had worked as supervisor and that there he would give out orders which were obeyed by the employees; that his father always had the mania that he was a supervisor, notwithstanding that he was pensioned; that prior to his retirement he generally got up at about three in the morning to go to work; and that he went about three times with his father to "La Carlota". As documentary evidence the plaintiffs presented Ortiz Santiago's will, a certified copy of the judgment rendered on February 13, 1947 declaring Mercedes Flores an acknowledged natural daughter of the deceased Ramón Ortiz Santiago; and a certified copy of a judgment by consent rendered on January 19, 1912, wherein $250 as damages were granted to defendant herein María Bermúdez for the accidental death of a son of hers.

Defendants' evidence consisted in the testimony of Manuel Durán Sellas, an officer of the Heirs of Cautiño[2] and of Oscar Morera, one of the witnesses to the will. The former testified that the deceased Ramón Ortiz Santiago worked for Cautiño for 27 years; that Ortiz Santiago was in charge of the live stock, farm and dairy and that when he was pensioned, approximately 14 or 15 years prior to his death, he was already quite an old man and horseback riding was hard on him because he had a hernia; but that in spite of the fact that he was officially pensioned, Cautiño utilized his services sometimes in the vaccination of the live stock and when there were sick animals or steers to be castrated, and that this happened four, five or six times a year, until Ortiz Santiago died. Oscar Morera testified that Ortiz Santiago sent for him to serve as witness to the will; that the latter was his neighbor and he knew him for many years and that when don Ramón's will was signed he said "I have done my duty."

On the preceding oral and documentary evidence the lower court, as we have indicated, declared void the designation of heirs and overruled the complaint in all its other particulars.

 Pursuant to the provisions of § 108 of the Law of Evidence (§470 of the Code of Civil Procedure, 1933 ed.) "The party holding the affirmative of the issue must produce the evidence to prove it"; and "therefore, the burden of proof lies on the party who would be defeated if no evidence were given on either side."[3] The plaintiffs did not comply with this requisite in the law, for even assuming that only the evidence they introduced were believed, we would find that saying that the testator Ramón Ortiz Santiago "did not sleep and he got up from his bed and kept pacing up and down all night long" and went to the farm "La Carlota" and said or

---

[2] Mr. Cautiño had died at the time of the trial. But he had not died when the will was executed in 1945.

[3] See also *Martínez* v. *Rodríguez*, 26 P.R.R. 5, 8.

did any such thing, is not authentic proof that he was not of sound mind at the time of the execution of the will. Section 615 of the Civil Code (1930 ed.) provides that "In order to judge of the capacity of the testator, his condition at the time of execution of the will only shall be taken into consideration." Plaintiff's evidence keeps absolute silence on the mental state of the testator at the time of the execution of the will. Be it as it may, Ortiz Santiago's behavior, as reported by his son on the witness stand, could perhaps constitute eccentricities, but it was far from showing mental insanity. The commentator Manresa, in Vol. 5 of his *Comentarios al Código Civil Español*, 1932 ed., p. 338, says that "We must not mistake insanity for the mere peculiar or eccentric character of the testator. If it were not thus . . . how many wills would be saved, especially today, when certain alienists want to see a madman in every person?" The renowned commentator, furthermore, says at p. 340 of his book ". . . all persons should be considered completely sane and in the full enjoyment of their civil rights, so long as they are not declared incapacitated by the court, or the perturbation of their faculties is unmistakably verified . . ." and ". . . that the mental integrity in regard to the right to testate is a *juris tantum* presumption, which may only be destroyed by unmistakable and complete proof to the contrary." Such unmistakable and complete proof is altogether missing here.

Passing on to the second error assigned it will suffice to say that pursuant to § 769 of the Civil Code, as amended by Act No. 13 of March 29, 1945 (Sess. Laws, p. 38), "When the testator leaves no legitimate descendants or ascendants, the acknowledged natural children shall be entitled to one-half of the inheritance." Said one-half of the inheritance in favor of the acknowledged natural children was conclusively respected by the testator. This is clearly evident from the will in its entirety and in particular from

clause 7 thereof. On the other hand, as correctly indicated by the trial court, the preterition of plaintiff Mercedes Ortiz, who subsequent to the death of the testator was acknowledged in a filiation suit, did not annul the will as an entirety, only the designation of heirs. Section 742 of the Civil Code, 1930 ed.; *Ex parte Boerman* v. *Marrero*, 34 P.R.R. 120, 123. The bequests and betterments continued to be valid, unless proved to be inofficious. There was no evidence to this effect in this case. The legacy in favor of the defendant María Bermúdez Pérez was nothing but a bequest and it was not shown to be inofficious. It was therefore valid. *Iturrino* v. *Iturrino*, 24 P.R.R. 439, 447. The testator, in expressing his wish that the three houses he described in the will be given to said legatee in payment of the legacy made to her, did no other thing than to point out the specific property he wanted to be given to the legatee in payment of her legacy, after deducting the three legacies of $200 which he also made and which we have already mentioned. Nevertheless, he respected at all times the other half of the estate for the acknowledged natural children. He only disposed of the free third and he was entitled to do that. Manresa, vol VI, *op. cit.,* p. 350.

In regard to the third error as to the preferred credit of $2,000, the only evidence offered by the plaintiffs was the certified copy of the judgment by consent, to which we have already referred. We are unable to see how that evidence alone could convince the lower court of the nonexistence of the debt and that, on the contrary, the only debt which the deceased had with said María Bermúdez Pérez was the one of $200 alleged by the appellants.

Although they do not specifically assign it as an error, the plaintiffs also insist that the fact that Pedro Ortiz Torres was mentioned in the will as Pedro Ortiz Flores likewise annulled the will. We do not agree. Pursuant

to § 702 of the Civil Code, 1930 ed., "An error in the name, surname, or qualities of the heir shall not vitiate the designation when it may be possible, in any other manner, to know with certainty who is the person appointed." In the case at bar it is undeniable that, although an error was committed in designating the second surname of this heir, it was known with certainty who was the person appointed. See also, Manresa, Vol. VI, *op. cit.* 106.

The judgment appealed from will be affirmed.